UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRANCISCO GRACA,

               Plaintiff,

        vs.

CAIXA GERAL DE DEPOSITOS, S.A.,
CAIXA GERAL DE DEPOSITOS, NEW
YORK BRANCH,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUDGE CROTTY

Case No.

07 CV 2560

**NOTICE OF REMOVAL**



RECEIVED
MAR 2 8 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Defendant, Caixa Geral de Depositos, S.A. ("Defendant"), hereby files this Notice of

Removal of the above-captioned action to the United States District Court for the Southern

District of New York from the Supreme Court of the State of New York where the action is now

pending, captioned *Francisco Graca v. Caixa Geral de Depositos, S.A. and Caixa Geral de*

*Depositos, New York Branch*, Supreme Court of New York, New York County, Index No.

600545/07, and states:

      1.      Upon information and belief, Plaintiff Francisco Graca ("Plaintiff") commenced

this action in the Supreme Court of the State of New York, New York County, on February 21,

2007.  Process was served on Defendant on February 26, 2007.  A copy of Plaintiff's Summons

and Complaint setting forth the claim for relief upon which the action is based (attached hereto

as Exhibit A) was first received by Defendant on that date.

      2.      Plaintiff alleges breach of contract and age discrimination, and the United States

District Court for the Southern District of New York has jurisdiction over the action pursuant to

28 U.S.C. § 1332(a) by reason of the diversity of citizenship of the parties.

      3.      The matter in dispute exceeds $75,000, exclusive of interest and costs.

4.      Upon information and belief, at the time of the commencement of this action in state court, and since that time, Plaintiff was a citizen of the United States and of the State of New York.

5.      Upon information and belief, Plaintiff was also a citizen of the Republic of Portugal.  For diversity purposes, only the U.S. citizenship of a dual citizen is relevant.  *See, e.g., Action S.A. v. Marc Rich & Co.*, 951 F.2d 504 (2d Cir. 1991); *Mutuelles Unies v. Kroll & Lindstrom*, 957 F.2d 707, 711 (9th Cir. 1992); *Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir. 1980).

6.      Defendant Caixa Geral de Depositos, S.A., was, and still is, a banking corporation duly organized under the laws of the Republic of Portugal and having its principal office in the city of Lisbon, Republic of Portugal.

7.      Plaintiff's Complaint purports to name a second defendant: "Caixa Geral de Depositos, New York Branch."  However, Caixa Geral de Depositos, New York Branch is not a legal entity and is not an independent entity incorporated under the laws of any state or country.  Instead, Caixa Geral de Depositos, S.A. is authorized to carry on the business of a branch in the State of New York (*see* Exhibit B hereto) and Caixa Geral de Depositos, New York Branch is said branch of Caixa Geral de Depositos, S.A..

8.      Defendant is a citizen of a foreign state.

9.      Jurisdiction exists in this Court where the matter in controversy is between "citizens of a State and subjects or citizens of a foreign state," and where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)(2). Accordingly, the District Court has original jurisdiction over this action.

10.     A copy of all process, pleadings and orders served upon Defendant is attached hereto as Exhibit A.

11.     Defendant will give written notice of the filing of this notice as required by 28 U.S.C. § 1446(d).  A copy of this notice will be filed with the clerk of the Supreme Court of the State of New York, County of New York as required by 28 U.S.C. § 1446(d).


        WHEREFORE, Defendant requests that this action proceed in this Court as an action properly removed to it.

Dated: New York, New York
       March 28, 2007


                                        Respectfully submitted,
                                        COOLEY GODWARD KRONISH LLP

                                        By:_____
                                            William O'Brien  (WO-5276)

                                        1114 Avenue of the Americas
                                        New York, NY 10036-7798
                                        Phone: (212) 479-6000
                                        Fax:    (212) 479-6275

                                        Attorneys for Caixa Geral de Depositos, S.A.

C 119—Summons without Notice, Supreme Court, 10-73
Personal Service.

COPYRIGHT 1973 BY JULIUS BLUMBERG, INC., LAW BLANK PUBLISHERS

## Supreme Court of the State of New York
## County of

| | |
|---|---|
| FRANCISCO GRACA, | Index No. 600645/07 |
| | Plaintiff designates |
| | New York |
| | County as the place of trial |
| | |
| | The basis of the venue is |
| | Plaintiff's Residence |
| Plaintiff | |
| against | |
| CAIXA GERAL DeDEPOSITOS, S.A. | **Summons** |
| and | |
| CAIXA GERAL DeDEPOSITOS, NEW YORK BRANCH, | Plaintiff resides at |
| | 210 East 65th Street |
| | New York, N.Y. |
| Defendant | County of New York. |

To the above named Defendant

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated, February 20, 2007

JOSEPH McQUADE & McQUADE

Defendant's address: 280 Park Avenue – 28th Floor
New York, New York 10017

NEW YORK
COUNTY CLERK'S OFFICE

FEB 27 2007

NOT COMPARED
WITH COPY FILED

Attorney(s) for Plaintiff

Post Office Address
104 East 40th Street, Suite 307
New York, N.Y. 10016
(212) 599-3644

FAX 212-599-3116

4/4

NEW YORK
COUNTY CLERK'S OFFICE

FEB 2 1 2007

NOT COMPARED
WITH COPY FILED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------x

FRANCISCO GRACA,

                                        Plaintiff

    -against-                                                    **VERIFIED COMPLAINT**
                                                                      Index No.

CAIXA GERAL De DEPOSITOS, S.A.
      and
CAIXA GERAL De DEPOSITOS, New York Branch,
                                        Defendants.
--------------------------------------------------------------x

    Plaintiff, FRANCISCO GRACA, by his attorneys, McQuade & McQuade, as and for his

complaint, alleges as follows:

### THE  PARTIES

    1.  Plaintiff FRANCISCO GRACA ( hereinafter referred to as "GRACA") was at all times

relevant to this action an individual residing in the City and State of New York, County of New

York.

    2.  Upon information and belief, the Defendant, CAIXA GERAL De DEPOSITOS, S.A.

(hereinafter referred to as "CAIXA GERAL") is a banking corporation organized and established

under the laws of the Country of Portugal.

    3.  The Defendant CAIXA GERAL De DEPOSITOS, N.Y. (hereinafter referred to as

"CAIXA NEW YORK") is a banking corporation organized and incorporated under the laws of

the State of New York.

## STATEMENT OF FACTS

4. The Plaintiff, GRACA was and is an expert in the international banking and financial industry.

5. In approximately 1998, while he was working for a well-known international financial firm, the executives at CAIXA GERAL actively recruited Plaintiff GRACA with the express purpose of having Plaintiff establish a branch of its bank in the City of New York.

6. Plaintiff communicated to CAIXA GERAL that he would only agree to employment with the bank if he was guaranteed a year employment contract with year options and that he and CAIXA GERAL would enter into a written agreement under certain terms and conditions.

7. Subsequently, negotiations as to compensation and terms of employment followed. Drafts of the Agreement were prepared, reviewed and the revised Agreement was submitted to the parties.

8. In or about September, 1998, the Plaintiff and Defendant agreed to the terms of an interim agreement and a written formal agreement was signed by both parties. Annexed hereto and marked Exhibit "A" is a copy of this Agreement.

9. On or about October 25th , 1999 pursuant to the terms of the parties' interim agreement, this agreement terminated and the parties began negotiating a new, permanent Employment Agreement.

10. In or about October 28th , 2000 Plaintiff, GRACA personally signed the undated Employment Agreement and subsequently delivered the signed Agreement to ALBERTO

2

SOARES of CAIXA GERAL, to be signed by ALBERTO SOARES or another appropriate

officer of CAIXA GERAL. Annexed hereto and marked Exhibit "B" is a copy of this Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF
## EMPLOYMENT AGREEMENT

11. From October 25th , 1999 Plaintiff continued to work for Defendant CAIXA GERAL

in New York City prepared the license application, leased space, hired staff and opened the

banking branch for Defendant- bank at 280 Park Avenue, New York, New York.

12. From on or about March 2000 to December 31st, 2006, Plaintiff worked for

Defendants and received compensation, bonuses and benefits under the terms of this second

Employment Agreement.

13. From on or about January, 2000 and to December 31st, 2006 Defendant,

CAIXA NEW YORK paid compensation to Plaintiff GRACA, distributed bonuses, additional

salary increases and provided benefits to Plaintiff according to the terms of this Agreement

(Exhibit "B").

14. From January, 2000 to December 31st , 2006 Plaintiff acted as General Manager of

the New York branch of CAIXA GERAL and fully performed his duties and obligations pursuant

to the terms of this aforesaid Agreement.

15. On or about September 23rd , 2006, Defendants CAIXA GERAL wrote Plaintiff and

informed Plaintiff that his services would be terminated on December 31st , 2006.

16. Plaintiff demanded orally and in writing that he receive his severance package

according to the terms of this second Employment Agreement.

17.   Defendants refused to do so and have failed and refused and continue to refuse to make severance payments and benefits to Plaintiff as agreed upon.

18.   By reason of the foregoing, Defendants have breached the Agreement.

19.   Plaintiff GRACA has sustained damages in the amount of $783,184.58 U.S. dollars.

## AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF STATUTES

20.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "19", with the same force and effect as if fully set forth herein at length.

21.   Plaintiff was born on October 15, 1937, is 69 years of age and is in perfect health.

22.   Plaintiff GRACA has duly performed all his banking duties as General Manager of CAIXA NEW YORK and all management tasks for Defendants with great expertise and efficiency.

23.   Plaintiff has been successful in building a foreign banking branch for Defendant CAIXA GERAL and his efforts have resulted in substantial profits.  Plaintiff's work ethic and business decisions produced substantial recognition in banking circles for the Defendant's CAIXA GERAL's branch.

24.   Defendant CAIXA GERAL and CAIXA NEW YORK have engaged in unlawful employment practices and all acts were committed within the State of New York.

25.   Plaintiff has each year received outstanding and positive job performance and employment evaluations.

26.   Plaintiff has in addition received raises in his annual compensation over the period of

4

his employment pursuant to the terms of the Employment Agreement (Exhibit "B").

27.  In or about April, 2006, Plaintiff was informed by DANIEL CHAMBEL and CARLOS COSTA that he would be terminated. Plaintiff was told that he was to train another person in the company for the Defendant CAIXA GERAL and that person would be taking his place.

28. Plaintiff's duties were ultimately assumed by a younger man approximately 17 years his junior who remains the branch's Acting General Manager.

29.  Plaintiff's termination was due to his age only.

30.  Defendants are guilty of misconduct, unlawful employment practices and age discrimination.

31.  By reason of the above unlawful conduct, the Plaintiff has sustained damages in the amount of $ 2,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION FOR ATTORNEYS FEES

32.  Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "19" and "21" through "31" with the same force and effect as if fully set forth herein at length.

33.  Defendants have caused substantial damage to Plaintiff's professional status in the banking industry.

34.  Defendants have discriminated against Plaintiff GRACA.

35. Defendants are and should be obligated to pay any and all reasonable attorneys fees in this action.

WHEREFORE, Plaintiff demands judgment as follows:

a) on the first cause of action in the amount of $ 783,184.58 .

b) on the second cause of action in the amount of $ 2,000,000.00 .

c) on the third cause of action for reasonable attorney's fees.

d) and for the costs and disbursements of this action, and for such other relief as to this Court deems just and proper.

McQUADE & McQUA DE

By _____
JOSEPH McQUADE
104 East 40th St., Ste. 307
New York, NY 10016
Tel: (212) 599-3644
Fax: (212) 599-3116

6

## VERIFICATION

STATE OF NEW YORK          )
                                      :    ss.:
COUNTY OF NEW YORK    )


I, FRANCISCO GRACA, being duly sworn deposes and says:

I am the Plaintiff in the within action.  I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.

FRANCISCO  GRACA

Sworn to before me this
20th  day of February, 2007

JOSEPH McQUADE
Notary Public, State of New York
No. 60-2638585
Qualified in Westchester County
Commission Expires Nov. 30, 20___

7

Work Contract

Between:

FIRST PARTY: Caixa Geral de Depositos, SA, headquartered at Av. João
XXI,
63, Lisbon with a capital of Escudos 350,000,000,000.00, registered at
the
Registrar Office in Lisbon under number 2900, TIN 500960046,
represented in
this procedure by the  Head of the Personnel Department, Mr. António
Luis
Marinho de Castro, personal ID number 7022964; and

SECOND PARTY: Mr. Francisco das Neves Graca residing at Calcada da
Palma de
Baixo, number 10, 12 - B, 1600 Lisbon, ID Card number 757 dated March
13,
1992, issued in Lisbon, Tax ID 104365110;

In terms of the Civil Code articles starting with 1154 and thereafter,
this
Work Contract is hereby established subject to the following terms and
conditions:

1st

The FIRST PARTY hires the SECOND to promote all actions required to
estblish
a branch of CGD in New York, where he will become the General Manager
of the
branch for which he has been apointed under conditions to be defined
under a
local Employment Agreement.

Second

To accomplish the above mentioned objective, the SECOND PARTY will
articulate with the persons in charge of the International Division
observing the directives which will be provided to him.

Third

"A"

For his services the SECOND PARTY will be paid, by the FIRST PARTY, a
monthly gross amount in the sum of USD 17,500.00 (Seventeen thousand
and
five hundred US Dollars).


Fourth

 To the the above amount a premium may be added based on the results
achieved.


Fifth

The SECOND PARTY will have an automobile provided by CGD which will be
used
in connection with the services to be providd.


Sixth

THE FIRST PARTY WILL be reimbursed of expenses to be incurred with
travelling and accomodation relating to the services to be provided.


Seventh

The FIRST PARTY will provide housing facilities compatible with the
nature
of the services under contract and his household family, ensuring that
his
accomodation expenses will be reimbursed to him until the housing
facilities
become available.


Eighth

The FIRST PARTY will pay the applicable  airfare in business class
including
the members of his household as well as an additional annual trip to
and
from Portugal.


Nineth

1. This contact becomes effective on September 23, 1998 and expires
automatically on the opening day of the branch in New York.
2. This contract is freely revoked by both parties by giving a minimum
of 60
days notice without any indemnification.


Tenth

During the term of this contract, the FIRST PARTY will provide
accidental

insurance coverage identical to the expatriated officers abroad.

Lisbon, October 02, 1998

FIRST PARTY: _____    _____

SECOND PARTY; _____

**Attachments**

Files:

    **Origini_Protocole.rtf** (378k) [Preview]

<u>RETENTION AND EMPLOYMENT AGREEMENT</u>

AGREEMENT, dated as of _____ (the "Agreement") between Caixa Geral de Depositos ("CGD"), New York Branch, and Francisco N. Graca ("the Executive").

WHEREAS, the Board wishes to recognize the past and anticipated future value the Executive contributes to CGD by providing to the Executive the compensation and benefits arrangements described below; and

WHEREAS, to accomplish these objectives, the Board has authorized and directed CGD - New York Branch, to enter into this Agreement.

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. <u>TERM OF AGREEMENT</u>. The "Effective Date" shall mean January 1, 2000. The "Employment Term" shall mean the period commencing on the Effective Date and ending on December 31, 2000, provided, however, that the Employment Term shall automatically be extended for an additional one year period on December 31, 2000, and on each subsequent anniversary of such date (each such date being an "Extension Date") unless, at least 90 days prior to any Extension Date, either party shall give notice to the other in accordance with Section 9(b) of this Agreement of a desire not to so extend the Employment Term and, at least 30 days prior to such Extension Date, both parties agree that the Employment Term of this Agreement shall not be so extended.

2. <u>TERMS OF EMPLOYMENT</u>. (a)  <u>Position and Duties</u>. During the Employment Term, subject to the provisions of this Agreement, CGD hereby agrees to employ the Executive as provided in this subsection 2(a) and the Executive hereby agrees to accept such employment. The terms of such employment shall be that:

> (i)   subject to the direction and control of the Board, the Executive shall be Executive Vice President and General Manager of CGD - New York Branch

> (ii)  the Executive's services shall be performed primarily in New York, New York except for work-related travel.

(b)  <u>Exclusive Services</u>. During the Employment Term, and excluding any periods of vacation and sick leave to which the Executive is entitled, the Executive agrees to devote substantially all of his attention and time during normal business hours to the business and affairs of the New York Branch and, to the extent necessary to discharge the responsibilities assigned to the Executive hereunder, to use the Executive's reasonable best efforts to perform faithfully and efficiently such responsibilities.

3. <u>COMPENSATION AND BENEFITS</u>. Subject to the termination provisions of this Agreement:

(a)   <u>Base Salary</u>. During the Employment Term, the Executive shall receive an annual base salary ("Annual Base Salary") of USD250,000.00 per annum, which rate may be increased periodically during the Employment Term in the sole

"B"

discretion of the Board; provided, however, that such rate shall be reviewed no less often than annually, with the first such review to occur in or before January 1, 2001. The Annual Base Salary shall be payable in installments no less frequently than monthly, in arrears and in accordance with the New York Branch's normal payroll practices.

(b)   Automobile. During the Employment Term, the Executive shall be given an automobile for his personal and professional use the lease of which is not to exceed USD 700.00 per month, plus usual maintenance and gasoline costs.

(c)   Annual Bonus. In addition to Annual Base Salary, the Executive shall be considered, during the Employment Term, for the award of an annual bonus (the "Annual Bonus") in immediately available funds, the granting and amount of which shall be determined in the Board's sole discretion in accordance with the normal practice of CGD.

(d)   Incentive, Savings and Retirement Plans. During the Employment Term, the Executive shall be entitled to participate in all incentive, savings and retirement plans, practices, policies and programs applicable generally to other senior executives of the New York Branch.

(e)   Welfare Benefits Plans. During the Employment Term, the Executive and/or the Executive's family, as the case may be, shall be eligible for participation in and shall receive all benefits under welfare benefit plans, practices, policies and programs provided by the Branch (including, without limitation, medical, prescription, dental, disability, employee life, group life, accidental death and travel accident insurance and programs) to the extent applicable generally to other senior executives of the New York Branch.

(f)   Expenses. During the Employment Term, the Executive shall be entitled to receive prompt reimbursement for all reasonable expenses incurred by the Executive in accordance with the normal practice of the New York Branch upon the Executive's compliance with the New York Branch's generally applicable reimbursement practice.

(g)   Vacation. During each full calendar year during the Employment Term, the Executive shall be entitled to no fewer than 25 days of paid vacation; during each partial calendar year during the Employment Term the Executive shall be entitled to a pro rata portion of no fewer than 25 days of paid vacation. In addition, the Executive shall be entitled to all personal days and paid holidays given to other senior executives of the New York Branch. In addition, the Executive shall be entitled to air fare between New York and Lisbon for himself and his wife. Such air travel shall be in first or business class and the cost shall be bourne by CGD.

4   TERMINATION OF EMPLOYMENT.

(a)   Death or Disability. The Executive employment shall terminate automatically upon the Executive's death during the Employment Term. If the Board determines in good faith that the Disability (as defined below) of the Executive has occurred during the Employment Term, it may give to the Executive written notice in accordance with Section 9(b) of this Agreement of its intention to terminate the Executive's employment. In such event, the Executive's employment with the CGD shall terminate effective on the 30th day after receipt by the Executive of such notice (the "Disability Effective Date"), provided that, within the 30 days after such receipt, the Executive shall not

have returned to full-time performance of the Executive's duties. For purposes of this Agreement, "Disability" shall mean the failure of the Executive to perform substantially all of the Executive's duties with the Branch on a full-time basis for 180 consecutive business days as a result of incapacity due to mental or physical illness which is determined to be total and permanent by a physician selected by CGD or its insurers and acceptable to the Executive or the Executive's legal representative.

(b)    Cause. CGD may terminate the Executive's employment during the Employment Term for Cause. For purposes of this Agreement, "Cause" shall mean:

(i)    the willful and continued failure of the Executive to perform substantially all of the Executive's duties with the New York Branch (other than any such failure resulting from incapacity due to physical or mental illness), after a written demand for substantial performance is delivered to the Executive by the Board which specifically identifies the manner in which the Board believes that the Executive has not substantially performed the Executive's duties; or

(ii)    the willful engaging by the Executive in illegal conduct or gross misconduct which is materially and demonstrably injurious to the New York Branch.

For purposes of this provision, no act or failure to act, on the part of the Executive, shall be considered "willful" unless it is done, or omitted to be done, by the Executive in bad faith or without reasonable belief that the Executive's action or omission was in the best interest of the New York Branch. Any act, or failure to act, based upon authority given pursuant to a resolution duly adopted by the Board or based upon the advice of counsel for the New York Branch shall be conclusively presumed to be done, or omitted to be done, by the Executive in good faith and in the best interest of the New York Branch.

(c)    Good Reason. The Executive, for Good Reason, may terminate the Executive's employment during the employment Term. For purposes of this Agreement, "Good Reason" shall mean:

(i)    the assignment to the Executive of any duties materially inconsistent with the Executive's position (including status, offices, titles and reporting requirements, authority, duties or responsibilities) as contemplated by Section 2(a) of this Agreement, or any other action by CGD which results in a diminution of such position, authority, duties or responsibilities), excluding for this purpose all isolated, insubstantial and inadvertent action not taken in bad faith and which is remedied by the New York Branch promptly after receipt of notice thereof given by the Executive;

(ii)    any failure by CGD to comply with any of the provisions of Section 3 of this Agreement, other than an isolated, insubstantial and inadvertent failure not occurring in bad faith and which is remedied by CGD promptly after receipt of notice thereof given by the Executive;

(iii)    CGD's requiring the Executive to be based at any office or location other than is provided in Section 2(a)(ii) hereof;

(iv)   any purported termination by CGD of the Executive's employment other than as expressly permitted by this Agreement;

(v)   any failure by CGD to achieve the Assumption (as defined in Section 8(c) hereof) in accordance with the provisions of Section 8(c) of this Agreement;

(vi)   the reasonable determination by the Executive in good faith that the circumstances of his employment, including, but not limited to, his working relationship with the Board, have become such that he cannot continue to effectively perform the responsibilities and duties required of him hereunder.

For purposes of this Section 4(c), any good faith determination of "Good Reason" made by the Executive shall be conclusive.

(d).   Termination Other Than for Cause, Death or Disability. The Executive's employment may be terminated during the Employment Term for any reason or no reason in CGD's sole discretion.

(e)   Notice of Termination. Any termination by CGD for Cause, or by Executive for Good Reason, shall be communicated by Notice of Termination (as defined below) to the other party hereto given in accordance with Section 9(b) of this Agreement. For purposes of this Agreement, a "Notice of Termination" means a written notice which (i) indicates the specific termination provision in this Agreement relied upon, (ii) to the extent applicable, sets forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Executive's employment under the provision so indicated, and (iii) if the Date of Termination (as set forth below) is other than the date of receipt of such notice, specifies the termination date (which date shall be not more than thirty days after the giving of such notice)

(f)   Date of Termination. "Date of Termination" means if the Executive's employment is terminated by CGD for Cause, or by the Executive for Good Reason, the date of receipt of the Notice of Termination or any later date specified herein, as the case may be, (ii) if the Executive's employment is terminated by CGD other than for Cause or Disability, the date on which CGD notifies the Executive of such termination and (iii) if the Executive's employment is terminated by reason of death or Disability, the date of death of the Executive or the Disability Effective Date, as the case may be.

5. CGD'S OBLIGATIONS UPON TERMINATION.

(a)   Resignation for Good Reason or Termination Other Than for Cause, Death or Disability. If, during the Employment Term, the Executive shall terminate employment for Good Reason or CGD shall terminate the Executive's employment other than for Cause, Death or Disability;

(i)   CGD shall pay to the Executive in a lump sum in immediately available funds within 15 days after the date of Termination the aggregate of the following amounts:

A. the sum of (1) the Executive's Annual Base Salary through the Date of Termination to the extent not theretofore paid and (2) any compensation previously deferred by the Executive (together with any accrued interest or earnings thereon) and

any accrued vacation pay, in each case to the extent not theretofore paid (the sum of the amounts described in clauses (1) and (2) shall be hereinafter referred to as the "Accrued Obligations"); and

B. the amount equal to the sum of (1) two times the Annual Base Salary and (2) two times the highest Annual Bonus paid in any of the three previous years.

(ii)     until the later of (1) the end of the Employment Term, (2) one year following Date of Termination or (3) such other time as may be provided by the terms of the appropriate plan program, practice or policy, CGD, at its sole expense, shall continue benefits to the Executive and/or the Executive's family at least equal to those provided for in Section 3(d) of this Agreement, provided, however, that if the Executive becomes reemployed with another employer and is eligible to receive medical or other welfare benefits under another employer-provided plan, the medical and other welfare benefits described herein shall be secondary to those provided under such other plan during such applicable period of eligibility; and provided further that, for purposes of determining eligibility (but not the time of commencement of benefits) of the Executive for retiree benefits pursuant to any plans, practices, programs and policies of CGD, the Executive shall be considered to have remained employed through the Employment Term and to have retired on the last day of such period, and

(iii)    to the extend not theretofore paid or provided, CGD shall timely pay or provide to the Executive any other amounts or benefits required to be paid or provided or which the Executive is eligible to receive under any plan, program, policy or practice of CGD (such amounts and benefits shall be hereinafter referred to as the "Other Benefits"); provided, however, notwithstanding any provision of this Agreement to the Contrary, if any amounts due to the Executive under this Agreement and the Other Benefits constitute a "parachute payment" as such term is defined in Section 280G(b)(2) of the Internal Revenue Code of 1986, as amended (the "Code"), then the aggregate of the amounts constituting the parachute payment shall be reduced to any amount that will equal three times the "base amount" (as such term is defined in Section 280G(b)(3) of the Code) less $1.00. All determinations required to be made under this subsection, including the assumptions to be utilized in arriving at such determination, shall be made by such certified public accounting firm as may be designated by the Executive (the "Accounting Firm"), which shall provide detailed supporting calculations both to CGD and the Executive within 10 business days of the receipt of notice from CGD or the Executive that there shall be a Payment, or such earlier time as is requested by CGD or the Executive. All fees and expenses of the Accounting Firm shall be borne solely by CGD. Any determination by the Accounting Firm shall be binding upon CGD and the Executive.

(b)     Death or Disability. If the Executive's employment is terminated by reason of the Executive's death or Disability during the Employment Term, this Agreement shall terminate without further obligations to the Executive, other

than for payment of Accrued Obligations and the timely payment or provision of Other Benefits. Accrued Obligations shall be paid to the Executive in a lump sum in cash within 15 days of the Date of Termination.

(c)   Termination for Cause; Resignation Other Than for Good Reason. If the Executive's employment shall be terminated for Cause during the Employment Term, this Agreement shall terminate without further obligations to the Executive other than the obligation to pay to the Executive (x) the Annual Base Salary through the Date of Termination, (y) the amount of any compensation previously deferred by the Executive, and (z) Other Benefits, in each case to the extent theretofore unpaid. If the Executive voluntarily terminates employment during the Employment Term, excluding a termination for Good Reason, this Agreement shall terminate without further obligations to the Executive, other than for Accrued Obligations and the timely payment or provision of Other Benefits. In such case, all Accrued Obligations shall be paid to the Executive in a lump sum in cash within 15 days of the Date of Termination.

6. NON-EXCLUSIVITY OF RIGHTS. Nothing in this Agreement shall prevent or limit the Executive's continuing or future participation in any plan, program, policy or practice provided by CGD - New York Branch and for which the Executive may qualify; provided, however, that the amounts payable to the Executive hereunder shall be in full satisfaction of any benefit or payment to which the Executive may otherwise be entitled to under any plan, program, policy or practice of the New York Branch which provides for severance benefits or payments. Amounts which are vested benefits or which the Executive is otherwise entitled to receive under any plan, policy, practice program of or any contract or agreement with the New York Branch at or subsequent to the Date of Termination shall be payable in accordance with such plan, policy, practice or program or contract or agreement except as explicitly modified by this Agreement.

7. CONFIDENTIAL INFORMATION. The Executive shall hold in a fiduciary capacity for the benefit of the New York Branch all secret or confidential information, knowledge or data relating to the New York Branch, and its businesses, which shall have been obtained by the Executive during the Executive's employment by CGD and which shall not be or become public knowledge (other than by acts by the Executive or representatives of the Executive in violation of this Agreement). After termination of the Executive's employment with the New York Branch, the Executive shall not, without the prior written consent of CGD or as may otherwise be required by law or legal process, communicate or divulge any such information, knowledge or data to anyone other than CGD and those designated by it. The Executive shall keep confidential, except by written consent of CGD or as otherwise required by law or legal process, the terms and existence of this Agreement and all discussions with the Company and its legal counsel regarding this Agreement and any term hereof. Notwithstanding any other provision of this Agreement, the provisions of this Section 7 shall survive termination of the Agreement.

8. SUCCESSORS.

(a)   This Agreement is personal to the Executive and without the prior written consent of CGD shall not be assignable by the Executive otherwise than by which the laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Executive's legal representatives.

(b)    This Agreement shall inure to the benefit of and be binding upon CGD and its successors and assigns.

(c)    CGD will require any successor (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of CGD to assume expressly and agree to perform this Agreement (the covenant that CGD require such assumption of this Agreement by any successor shall herein be referred to as the "Assumption"). As used in this Agreement, "Company" shall mean CGD as hereinbefore defined and any successor to its business and/or assets as aforesaid which assumes and agrees to perform this Agreement by operation of law, or otherwise.

9.  MISCELLANEOUS.

(a)    This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed and performed entirely in that State. The captions of this Agreement are not part of the provisions hereof and shall have no force or effect. This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives.

(b)    All notices and other communications hereunder shall be in writing and shall be given by hand delivery to the other party or by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

> If to the Executive: Francisco N. Graça
> 280 Park Avenue, 28th Floor (East Bldg.)
> New York, New York 10017
> U.S.A.
>
> If to CGD: Avenida João XXI, 63
> 1000 Lisbon, Portugal

or to such other address as either party shall have furnished to the other in writing in accordance herewith. Notice and communications shall be effective when actually received by the addressee or delivered to the address provided for herein.

(c)    Each provision of this Agreement shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law or unenforceable for any reason, such provision shall be invalid only to the extent necessary and the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(d)    The New York Branch may withhold from any amounts payable under this Agreement such federal, state, local or foreign taxes as shall be required to be withheld pursuant to any applicable law or regulation; and such other deductions as may be required under applicable law or terms of any applicable plan or program of the New York Branch.

(e)    The Executive's or the New York Branch's failure to insist upon strict compliance with any provision hereof or any other provision of this Agreement or the failure to assert any right the Executive or the New York

Branch may have hereunder, including, without limitation, the right of the Executive to terminate employment for Good Reason pursuant to Section 4(c) of this Agreement and right of CGD to terminate for Cause pursuant to Section 4(b) of this Agreement, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

(f)   This Agreement represents the entire agreement of the parties and shall supersede any and all previous contracts, arrangements or understandings between CGD and Executive including, without limitation, the Prior Agreement.

IN WITNESS WHEREOF, the Executive has hereunto set the Executive's hand and, pursuant to the authorization from its Board of Directors, CGD has caused this Agreement to be executed in its name on its behalf, all as of the day and year first above written.

CAIXA GERAL DE DEPÓSITOS

By:_____

By:_____

By:_____
Francisco N. Graça

Index No.                                    Year 2007

SUPREME COURT
COUNTY OF NEW YORK

FRANCISCO GRACA,
                                    Plaintiff

                    Against

CAIXA GERAL De DEPOSITOS, S.A.,
                    and
CAIXA GERAL DeDEPOSITOS, New York Branch

SUMMONS
AND
VERIFIED COMPLAINT

Signature (Rule 130-1.1-a)

Print name beneath    JOSEPH McQUADE

McQUADE & McQUADE
Attorney for    Plaintiff
Office and Post Office Address, Telephone
104 E. 40th St.
New York, N.Y. 10016
(212) 599-3644

To

Attorney(s) for

Service of a copy of the within is hereby admitted
Dated,

Attorney(s) for

---

NOTICE OF ENTRY

PLEASE take notice that the within is a (certified)
true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

            Yours, etc.

Attorney for
        Office and Post Office Address

To

Attorney(s) for

---

NOTICE OF SETTLEMENT

PLEASE take notice that an order

of which the within is a true copy will be presented
for settlement to the Hon.
one of the judges of the within named Court, at
on
                M.
Dated,

            Yours, etc.

Attorney for
        Office and Post Office Address

To

Attorney(s) for

# BANKING DEPARTMENT



# STATE OF NEW YORK

## LICENSE TO MAINTAIN A BRANCH

WHEREAS, **CAIXA GERAL DE DEPOSITOS**, a banking corporation duly organized under the laws of the Republic of Portugal and having its principal office in the city of Lisbon, Republic of Portugal, has made application, pursuant to the provisions of Chapter 2 of the Consolidated Laws, the Banking Law, to maintain a branch at 280 Park Avenue, Borough of Manhattan, City of New York for the purpose of business in accordance with the provisions of Article V of such law, and

WHEREAS, The said corporation has complied with the conditions imposed by the Banking Law and appears to be duly qualified to maintain such branch under provisions thereof;

NOW, THEREFORE, BE IT KNOWN THAT the said applicant is hereby authorized to carry on the business of a branch at the above location.

This license is to be effective on or after October 1, 1999 and shall remain in full force and effect, unless suspended, surrendered or revoked.



WITNESS, my hand and official seal of the Banking Department at the City of New York, this 30th day of September in the year one thousand nine hundred and ninety-nine.

_____
Acting Superintendent of Banks